UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHIVA STEIN, | : |
|       Plaintiff, | : CIVIL ACTION NO. _____ |
| - against - | : |
| MEDTRONIC PLC, | : |
|       Defendant. | : |

## COMPLAINT

Plaintiff, Shiva Stein, alleges, upon information and belief based upon, *inter alia*, the investigation made by and through her attorneys, except as to those allegations that pertain to the plaintiff herself, which are alleged upon knowledge, as follows:

## NATURE OF THE ACTION

1. This is a stockholder's direct action under Section 14(a) of the Securities Exchange Act of 1934, as amended (the Exchange Act), 15 U.S.C. § 78n(a), and the rules and regulations of the United States Securities and Exchange Commission (the SEC).

2. Plaintiff, a shareholder in Defendant Medtronic PLC ("Medtronic" or the "Company"), seeks an injunction to prevent a vote by its shareholders on Management Proposal 4 in the 2017 Proxy Statement for the annual meeting of Medtronic shareholders scheduled for December 8, 2017. The grounds for this injunction are Defendant's failures to comply with the SEC's disclosure requirements for proxy statements.

3. Management Proposal 4 requests that the shareholders amend and restate the Medtronic plc Amended and Restated 2013 Stock Award and Incentive Plan ("Restated 2013 Plan"), which proposes to allow Medtronic to award 71,033,122 shares to participants in the

plan. But it is unclear how many participants are in the plan and why they are receiving these awards. SEC Rule 14a-3(a), 17 C.F.R. § 240.14a-3, requires that public companies may not solicit shareholder votes without furnishing a proxy statement "containing the information specified in Schedule 14A," 17 C.F.R. § 240.14a-101. Item 10(a)(1) of Schedule 14A specifically requires that "[i]f action is to be taken with respect to any plan pursuant to which cash or noncash compensation may be paid or distributed," the proxy statement soliciting this vote must "[d]escribe briefly the material features of the plan being acted upon, identify each class of persons who will be eligible to participate therein, indicate the approximate number of persons in each such class, and state the basis of such participation."

4. Proposal 4 of the 2017 Proxy Statement fails to disclose the classes of eligible participants, their approximate number, and the basis of their participation in the Restated 2013 Plan. Thus, the 2017 Proxy Statement does not comply with the SEC rules and regulations, and the Court should enjoin that vote unless and until Defendant furnishes its shareholders with a supplemental proxy statement with those specific disclosures.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to Section 27(a) of the Exchange Act, 15 U.S.C. § 78aa(a).

6. In connection with the acts, omissions, conduct and wrongs alleged herein, Defendant used the mails and the means or instrumentalities of interstate commerce.

7. Venue is proper in this district because, as allowed under Section 27(a) of the Exchange Act, this district is where the violation at issue in this case occurred because the Plaintiff is a resident of this district.

## PARTIES

8. Plaintiff is, and has been continuously since January 2015, a holder of Medtronic ordinary stock.

9. Medtronic is a corporation organized under the laws of the Republic of Ireland. The Company's last fiscal year ended April 28, 2017. As of July 7, 2017, it had 1,358,576,031 ordinary shares outstanding. Medtronic's stock is traded on the NYSE under the symbol MDT. Medtronic is among the world's largest medical technology, services and solutions companies.

## WRONGFUL ACTS AND OMISSIONS

10. Medtronic has scheduled the annual shareholders' meeting for December 8, 2017. On August 28, 2017, it furnished its shareholders with the 2017 Proxy Statement to solicit their proxies for four management proposals, to receive and consider the Company's Irish Statutory Financial Statements for the fiscal year, and to transact other business that may properly come before the annual meeting.

11. Management Proposal 4 requests that the shareholders approve the Restated 2013 Plan, including 50,000,000 newly authorized shares, which Medtronic will be able to grant to participants in the plan immediately after the stockholder vote. But this proposal fails to provide sufficient – and federally required – information for Medtronic stockholders to understand how many participants there are in the plan or why they are eligible for such shares.

12. Because Management Proposal 4 concerns a stockholder vote on a compensation plan, the SEC's rules and regulations require the 2017 Proxy Statement to disclose certain information concerning the Restated 2013 Plan. Specifically, Item 10(a)(1) of Schedule 14A, 17 C.F.R. § 240.14a-101 states:

> Compensation Plans. If action is to be taken with respect to any plan pursuant to which cash or noncash compensation may be paid or distributed, furnish the following information:
>
> (a) Plans subject to security holder action.
>
> (1) Describe briefly the material features of the plan being acted upon, identify each class of persons who will be eligible to participate therein, indicate the approximate number of persons in each such class, and state the basis of such participation.

But the 2017 Proxy Statement omits these disclosures.

13. Instead of providing the "approximate number of persons in each such class, and … the basis of such participation," Management Proposal 4 only tells stockholders the following about who will receive these awards:

> **Eligibility and Participation**
>
> The committee may select any or all of the following classes of persons to be granted awards under the plan: (i) members of our Board; (ii) officers of, employees of, and consultants to the Company and/or any of our subsidiaries; and (iii) individuals who have accepted offers of employment or consultancy from the Company, and/or from any of our subsidiaries; provided, however, that no grant will be effective prior to the date on which such individual's employment or consultancy commences. We have 91,000 employees as of July 1, 2017, but awards will generally be limited to executive and management-level employees.

14. Nowhere in the 2017 Proxy Statement does Medtronic disclose the number of (1) officers of the Company, (2) officers of the Company's subsidiaries, (3) employees of the Company's subsidiaries, (4) consultants of the Company, (5) consultants of the Company's subsidiaries, (6) individuals who have accepted offers of employment or consultancy from the Company, (7) individuals who have accepted offers of employment or consultancy from the Company's subsidiaries. Indeed, according to the Restated 2013 Plan § 1.2(ss), which is annexed to the 2017 Proxy Statement, the definition of "subsidiary" is very broad and it is unclear how many subsidiaries, as defined under the plan, the Company may have:

4

"Subsidiary" has the meaning set forth in section 7 of the Companies Act 2014 of the Republic of Ireland; provided that, to the extent required to avoid the imposition of additional taxes under Section 409A of the Code, an entity shall not be treated as a Subsidiary unless it is also an entity in which the Company has a "controlling interest" (as defined in Treas. Reg. Section 1.409A-1(b)(5)(ii)(E)(1)), either directly or through a chain of corporations or other entities in which each corporation or other entity has a "controlling interest" in another corporation or entity in the chain, as determined by the Committee.

15. According to the Company's most recent Form 10-K, Medtronic has approximately 550 subsidiaries, though it is unclear how many of these subsidiaries fall within this definition.

16. What is more, the only number the Company provides concerning the participants in the plan is its total number of employees, and the 2017 Proxy Statement concedes that a vast number of these employees will not be participants in the 2013 Restated Plan: "We have 91,000 employees as of July 1, 2017, but awards will generally be limited to executive and management-level employees." Nowhere does the 2017 Proxy Statement provide the number of "executive and management-level employees."

17. Finally, the definition of "eligibility" in Management Proposal 4 conflicts with the terms of the Restated 2013 Plan. To wit, Management Proposal 4 says that the only directors who can participate in the plan are "members of our Board," and this capitalized term "Board" is earlier defined to be the "Board of Directors" of Medtronic, which does not include the directors of any of its subsidiaries. As a result, by its terms, the proposal excludes directors from Medtronic's subsidiaries. Indeed, directors are the *only* class of participants where the eligibility section of Management Proposal 4 does not also include subsidiaries.

18. But the Restated 2013 Plan itself conflicts with this explanation because it *includes* the directors of Medtronic's subsidiaries in section 1.2(n):

5

> "Eligible Individuals" means <u>directors</u>, officers, employees, and consultants of the Company <u>or any Subsidiary</u>, and prospective employees, officers and consultants, who have accepted offers of employment or consultancy from the Company or any Subsidiary; provided however, that no grant shall be effective prior to the date on which such individual's employment or consultancy commences.

19. As a result, (1) the proposal conflicts with the plan, (2) if the proposal is correct, the plan must be amended to state that the directors of subsidiaries are <u>not</u> eligible, but (3) if the plan is correct, the proposal must be fixed *and* it must include the number of directors of subsidiaries that are plan participants.

20. As a result of the above, it is entirely unclear from the 2017 Proxy Statement how many participants will be awarded the 50,000,000 newly authorized shares that stockholders are being asked to approve or the basis of their receipt of such awards.

21. This contravention of the SEC rules renders the 2017 Proxy Statement unlawful under § 14(a) of the Exchange Act.

22. As stated above, the Restated 2013 Plan will allow for 50,000,000 newly authorized shares of Common Stock to be awarded immediately after the stockholder vote. This will increase the number of shares available for awards at Medtronic to approximately 71,033,122. According to the 2017 Proxy Statement, only 21,033,122 now remain for awards so this proposal will more than triple the number of shares available for grants.

23. The preceding paragraphs state a direct claim for relief against Medtronic under § 14(a) of the Exchange Act for acting in contravention of the rules and regulations prescribed by the SEC.

24. As a result of these actions, plaintiff will be injured, and she has no adequate remedy at law. She will suffer irreparable harm on Management Proposal 4 if no action is taken

to ameliorate this harm because, in addition to being forced to vote without this information, the Restated 2013 Plan allows for over 50 million new shares to be granted to an unknown number of (1) officers of the Company, (2) officers of the Company's subsidiaries, (3) employees of the Company's subsidiaries, (4) consultants of the Company, (5) consultants of the Company's subsidiaries, (6) individuals who have accepted offers of employment or consultancy from the Company, (7) individuals who have accepted offers of employment or consultancy from the Company's subsidiaries, (8) executive and management-level employees.  Moreover, it is not clear whether the directors of Medtronic's subsidiaries are, in fact, eligible for awards under the plan because the language in the plan contradicts the statements in the proposal.

25. Unwinding these awards will be impossible once they are granted following the December 8, 2017 vote.  As such, it is necessary for the Court to take action to enjoin the vote beforehand to prevent shares from being distributed to participants based on an uninformed vote that lacks proper shareholder approval.

26. To ameliorate the injury, injunctive relief is required in the form of an amended proxy statement that provides the information required by Item 10(a)(1) of Schedule 14A with regard to Proposal 4.

27. Consequently, Medtronic should be enjoined from presenting Proposal 4 for a stockholder vote at the December 8, 2017 annual meeting or certifying or otherwise accepting any vote cast, by proxy or in person, by or on behalf of any Medtronic shareholder in connection with Proposal 4 in the 2017 Proxy Statement.

**RELIEF REQUESTED**

**WHEREFORE,** Plaintiff requests the following relief:

A. A preliminary and permanent injunction, enjoining Medtronic from

   (i) certifying or otherwise accepting any vote cast, by proxy or in person, by or on behalf of any Medtronic shareholder in connection with Proposal 4 in the 2017 Proxy Statement;

   (ii) presenting Proposal 4 for a shareholder vote at the December 8, 2017 annual meeting;

 B. A preliminary and permanent injunction requiring Medtronic to furnish a supplemental proxy statement with the information required by 17 C.F.R. §240.14a-101, Item 10(a)(1).

 C. Otherwise proceeding at its December 8, 2017 annual shareholders meeting or at any other time in a manner inconsistent with Item 10(a)(1).

 D. Awarding such other and further relief as this Court deems just and proper.

Dated: New York, New York
   September 12, 2017

              **BARRACK, RODOS & BACINE**

              By: /s/ A. Arnold Gershon
                A. Arnold Gershon
                Michael A. Toomey
                Eleven Times Square
                640 8th Ave., 10th Floor 10036
                New York, NY 10022
                Telephone: (212) 688-0782
                Facsimile: (212) 688-0783

                *Attorneys for Plaintiff*